# PABST BREWING CO. v. E. CLEMENS HORST CO. *

## (Circuit Court of Appeals, Ninth Circuit. February 21, 1916.)

## No. 2639.

1. SALES ☞340—BREACH BY PURCHASER—REMEDIES OF SELLER.

   Upon the breach of a contract of sale by the purchaser, the seller is at liberty to fully perform on his part, and when he has done all that is necessary to effect a delivery of the property, so as to pass title, he may store or retain the property for the purchaser and sue for the contract price, or resell the property as agent for the purchaser, in which case his recovery will be the difference between the contract price and the net proceeds of the sale.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 927–942; Dec. Dig. ☞340.]

2. SALES ☞384—BREACH BY PURCHASER—REMEDIES OF SELLER.

   Upon the breach of a contract of sale by the buyer, it is not obligatory upon the seller to store the property for the buyer or sell it as the buyer's agent, and if he does not care to do so he is entitled to recover the difference between the contract price and the market price or value of the property at the time and place of delivery fixed by the contract.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. ☞384.]

3. SALES ☞345, 371—BREACH BY PURCHASER—REMEDIES OF SELLER.

   Upon the breach of a contract of sale by the buyer, the seller cannot sue for the contract price or sell the property as the buyer's agent and sue for the deficiency, unless the subject-matter of the sale is identified or in some manner appropriated to the contract.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 956–961, 1086–1088; Dec. Dig. ☞345, 371.]

4. SALES ☞384—ACTIONS FOR PRICE—MEASURE OF DAMAGES.

   In a seller's action for damages from a buyer's breach of a contract for the purchase of hops, where there was no allegation that the hops were resold, or as to the price for which they were resold, the measure of damages was the difference between the contract price and the market price at the time and place of delivery.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1098–1107; Dec. Dig. ☞384.]

5. SALES ☞181—ACTIONS FOR PRICE—ADMISSIBILITY OF EVIDENCE.

   In a seller's action to recover the difference between the contract price and the market price of hops, which the buyer refused to accept on the ground, among others, that the samples furnished by the seller were not

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

229 F.—58            *Rehearing denied May 8, 1916.

cleanly picked, witnesses testified that the samples did not exhibit the quality of hops contracted for, because they contained stems and leaves and were not cleanly picked. It was conceded that the hops tendered were picked by a picking machine. The buyer offered to prove that leaves and stems were being put in the hops by instructions of the seller; that the witnesses saw the hops being baled, and saw the leaves and stems being put into the drier. *Held*, that this evidence was admissible, as it tended to show that the hops were not of choice quality, and, conceding that the testimony should have been limited to the quality of the hops contained in the samples tendered, the rejected testimony had a direct tendency to corroborate the witnesses, who testified that the samples contained stems and leaves and were not cleanly picked.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 473–491; Dec. Dig. ☞181.]

6. EVIDENCE ☞166—BEST AND SECONDARY EVIDENCE—BOOKS OF ACCOUNT.

In a seller's action for damages from a buyer's breach of the contract of sale, it was error to permit a witness to testify from figures compiled from the seller's books, showing office expenses and insurance and other charges, and that the hops were sold at a price specified over and above these various charges, where the books themselves were accessible and unaccounted for, as they were the primary evidence of their contents, and evidence as to what they contained or showed was secondary and incompetent.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 556, 557; Dec. Dig. ☞166.]

7. EVIDENCE ☞376—DOCUMENTARY EVIDENCE—BOOKS OF ACCOUNT.

The books themselves were incompetent, where there was no testimony as to how or by whom they were kept, when the entries were made, or the sources from which they were made.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1628–1646; Dec. Dig. ☞376.]

8. EVIDENCE ☞142—MARKET VALUE—OTHER SALES.

In a seller's action for breach of a contract for the sale of hops to be delivered at Milwaukee, evidence was admitted as bearing upon the question of market value as to the prices for which sales of hops were made in April, May, and June, and even as late as July, 1913, though the buyer canceled the contract in November, 1912. *Held*, that this evidence was improperly admitted, especially where the price of hops declined rapidly after the cancellation of the contract, and also in view of the fact that the sales were made in many different states, and even in Canada, while the market value or price at Milwaukee was the basis of the measure of damages.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 416–423; Dec. Dig. ☞142.]

9. CUSTOMS AND USAGES ☞15—DELIVERY OF GOODS.

In a seller's action for damages from the buyer's refusal to accept hops, where it appeared that the buyer canceled the contract in November, 1912, and the complaint alleged a tender of performance about that time, evidence that it was customary under hop contracts to ship hops during the shipping season, which extended to the end of February or March of the following year, was incompetent, as the market price, forming the basis of the measure of damages, was to be fixed as of the date of the cancellation of the contract, or soon thereafter, especially where there was no testimony that the seller could have tendered or delivered hops of a quality superior to the samples rejected by the buyer at any time during such shipping season.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. §§ 30–33; Dec. Dig. ☞15.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. SALES ⌾382—ACTIONS FOR PRICE—ADMISSIBILITY OF EVIDENCE.

In an action for damages from a buyer's refusal to accept hops under a contract for the sale of air-dried Consumnes hops, where it appeared that the only air-dried Consumnes hops in existence were those produced by the seller, and that they had no market value as distinguished from other hops from the same district, but that air-dried hops and kiln-dried hops of equal quality had the same market value, evidence as to the market price of Consumnes hops should have been admitted, though not limited to air-dried hops.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1096; Dec. Dig. ⌾382.]

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Action by the E. Clemens Horst Company against the Pabst Brewing Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Heller, Powers & Ehrman, of San Francisco, Cal. (Thomas J. Geary, of Santa Rosa, Cal., and James L. Robison, of San Francisco, Cal., of counsel), for plaintiff in error.

Devlin & Devlin, of Sacramento, Cal., W. H. Carlin, of Marysville, Cal., and Maurice E. Harrison, of San Francisco, Cal., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge. This was an action to recover damages for the breach of a contract for the sale of hops. The E. Clemens Horst Company is a corporation organized and existing under the laws of the state of New Jersey, and for a number of years last past has been extensively engaged in the business of growing, buying, and selling hops. The Pabst Brewing Company is a corporation organized and existing under the laws of the state of Wisconsin, and is engaged in the manufacture of beer. For convenience of reference the parties will be hereafter referred to as the Horst Company and the Brewing Company. The Horst Company is the owner of a hop ranch of about 400 acres in the Consumnes river district in Sacramento county, Cal., upon which it grows and cures hops for market. The entire Consumnes district consists of about 800 or 900 acres. The hops produced by the Horst Company in this district are known as air-dried, as contradistinguished from kiln-dried. Kiln-dried hops are cured or dried by heat produced by a stove or furnace within the building, while the air-dried hops are cured or dried by hot air forced or blown into the building from without. The difference between the quality of the air-dried and kiln-dried hops is that the former retain the oils and resins better than the latter, and this is supposed to be an advantage. At least, such is the view of the Horst Company. No air-dried hops were produced in the year 1912 in the Consumnes district, except by the Horst Company.

In the month of August, 1911, the Horst Company entered into a contract by wire with the Brewing Company for the sale of 2,000 bales of choice, air-dried, Consumnes hops of the year 1912, at 20 cents per pound, plus freight, delivered at Milwaukee, Wis. On the 28th day of September, 1912, the Horst Company, at the instance of the Brewing Company, mailed to the latter 20 samples of Consumnes air-dried hops of the crop of 1912. On the 4th day of October, 1912, the Brewing Company notified the Horst Company that it would not accept hops of the quality shown by these samples, for the reason that they were not choice as called for by the contract of sale. On the 10th day of October, 1912, the Brewing Company mailed to the Horst Company 4 samples of Consumnes hops of a quality such as it would be willing to accept. On the 29th day of October, 1912, 14 additional samples were forwarded to the Brewing Company by the Horst Company. On the 4th day of November, 1912, the contract was canceled by the Brewing Company on the ground that the hops tendered were not of the quality agreed upon, and thereafter the present action was instituted to recover damages for breach of the contract of sale.

The complaint alleges in general terms the incorporation of the parties, the execution of the contract for the sale of the hops, the tender of the hops in performance of the contract, the refusal of the defendant to accept the tender, and the resulting damages in the sum of $32,000. Trial was had before the court and a jury, and the present writ of error was sued out to reverse a judgment entered on a verdict in favor of the Horst Company.

[1-3] The record contains 148 assignments of error, and objections and exceptions almost without number. Before taking up these several assignments, it might be well to refer briefly to the familiar rules of law applicable to actions of this kind. Upon the breach of a contract of sale by the purchaser, the seller is at liberty to fully perform on his part, and when he has done all that is necessary to effect a delivery of the property, so as to pass title to the purchaser, he may store or retain it for the purchaser, or he may resell it as agent for the purchaser. If he pursues the former course, he is entitled to maintain an action for the contract price of the goods. If he pursues the latter, his recovery will be the difference between the contract price and the net proceeds of the sale. But it is not obligatory upon him to adopt either of these courses, and if he does not care to do so he is entitled to recover the difference between the contract price and the market price or value of the property at the time and place of delivery fixed by the contract.

Every seller, however, may not pursue all three of these remedies. He cannot, for instance, pursue the first or second, unless the subject-matter of the sale is identified or in some manner appropriated to the contract, because in the one case he holds the property as agent for the purchaser, and in the other he sells it as agent for the purchaser, and unless the property is identified, or in some way appropriated to the contract, it can neither be held nor sold. As said by the court in Cherry Valley Iron Works v. Florence Iron River Co., 64 Fed. 569, 575, 12 C. C. A. 306, 312:

"If the subject-matter is identified when the contract is made, the title passes to the vendee, in the absence of controlling stipulations. When the subject-matter is subsequently identified by its appropriation to the contract, the title passes at the time of such appropriation. But when there has at no time been identification of the subject, the title remains in the vendor. In those cases where the title has passed before the contract is broken, and the rights of the parties have been converted into claims for damages arising from the breach, the nature and kind of remedies to which the vendor may resort are the subject of much controversy in the opinions of the courts. There is high authority for the proposition that the vendor, in such a case, may, among other remedies, by virtue of a species of lien for the purchase price, sell the goods as those of the vendee, and hold the latter for the difference between the price obtained and the contract price. This was the remedy resorted to here. It is not necessary for us to decide whether the vendor has this remedy in the class of cases just mentioned. It is clear that this case does not belong to that class. Here the title never passed, and the goods at all times remained the property of the vendor, subject to any disposition it might be pleased to make of them, until it finally sold them on the market to other parties. The implied authority of the vendor to segregate the goods and appropriate them to the contract had long previously expired. In such cases the rule is general, if not universal, that the measure of the damages which the vendor may recover is the difference between the contract price and the market price at the time fixed by the contract for delivery."

[4, 5] In this case the measure of damages was the difference between the contract price and the market price at the time and place of delivery, because there was no allegation in the complaint that the hops were resold, or of the price at which they were resold. In other words, the action was not brought to recover the difference between the contract price and the selling price, with expenses added, but to recover general damages; and the law fixes these at the difference between the contract price and the market price at the time and place of delivery. The issues in the case then were: First, was there a contract of sale? Second, was that contract breached by the Brewing Company? and, third, if there was a contract and a breach, what, if any, damages resulted therefrom? The court instructed the jury as a matter of law that there was a contract as alleged in the complaint, and this charge was justified by the admitted facts. It was likewise admitted that the Brewing Company canceled the contract and refused to accept the hops as tendered, so that the only vital issues remaining in the case were: Was the Horst Company ready, able, and willing to perform its part of the contract; and, if so, what damages resulted from the breach?

Let us now review some of the rulings complained of in the light of these issues and the general principles of law to which we have referred. One of the main issues in the case was the quality of the hops tendered by the Horst Company in performance of the contract. One of the objections urged against the samples furnished by the Horst Company was that the hops contained stems and leaves and were not cleanly picked. Upon that question the Brewing Company called two witnesses. The witness Chalmers testified that he had been engaged in the hop business in the Consumnes district for 30 years, that he knew the Horst Company ranch, and that he visited the ranch during the picking season of 1912 with one Traganza. He was then asked the following questions and the following proceedings occurred:

"Q. What did you observe about the picking machine? Just explain what you saw. A. Do you mean for me to tell you just what I saw? Q. Yes. A. Well, I will tell you.

"The Court: What is the purpose of this?

"Mr. Powers: To show that the leaves and stems were being put in these hops by instructions of Mr. Horst to put them in there.

"The Court: That has nothing to do with this case at all. It would depend upon the condition of the hops shown here.

"Mr. Powers: I would like to make my offer, so that your honor will understand. I offer to prove by this witness that he was present while these very hops were being baled; that he saw the leaves and stems being put into the drier; subsequently these hops were baled as they are here; that he actually saw those things with his own eyes.

"The Court: The evidence is excluded as wholly immaterial to the issue.

"Mr. Powers: Exception."

The witness Traganza was called, and stated that he was a farmer; that he knew the witness Chalmers, and accompanied him to the Horst Company ranch; that he saw the hop drier in operation; and that he remained there probably about two hours.. Counsel for the Horst Company interposed an objection to his testimony at this point, on the ground that it was evidently in line with the previous testimony of Chalmers. The court asked if this was the purpose of the testimony, and upon receiving an affirmative answer the objection was sustained, and an exception taken.

These rulings were erroneous. It was conceded throughout the trial that the hops tendered came from the ranch in question and were picked by a picking machine. The testimony thus offered tended strongly to show that the hops were not of choice quality, and that the Horst Company was not able to perform its contract with the Brewing Company. The testimony should not have been limited to the quality of the hops contained in the samples, because it was incumbent on the seller to go further, and show that the hops actually tendered were equal in quality to the samples furnished, in order to show its ability to perform the contract. But, if it be conceded that the testimony should have been limited to the quality of the hops contained in the samples, we still think the rejected testimony had a direct tendency to. corroborate the witnesses, who testified that the samples did not exhibit a choice quality of hops, for the reason that the hops contained stems and leaves and were not cleanly picked.

[6-8] One of the witnesses for the Horst Company was permitted to testify from figures compiled from the books of the Horst Company, showing office expenses in New York and Chicago, insurance charges, warehouse charges, freight charges, and other miscellaneous charges, and that the 2,000 bales of hops sold at an average net price of 13.66 cents per pound over and above these various charges. This testimony was clearly inadmissible. The books themselves afforded the primary evidence of their contents, and as long as they were accessible and unaccounted for any evidence as to what they contained or showed was secondary and incompetent. This rule is elementary. Furthermore, the books were not identified or proved, so as to render them competent, if offered. It appears from the compilations referred to that the books recorded transactions which took place in New York,

Chicago, and various other places throughout the United States, and there was not the slightest testimony as to how the books were kept, by whom they were kept, when the entries were made, or the sources from which they were made.

But, outside and beyond all this, many of the figures and computations were irrelevant and immaterial for any purpose. As already stated, this action was brought to recover general damages, or the difference between the contract price and the market price, and the books would only be competent in so far as they tended to establish the market price. No doubt evidence of sales made by the Horst Company of these hops within a reasonable time after the breach of the contract would be competent, as bearing upon the question of market value; but the testimony offered showed sales made in April, May, and June of 1913, and one as late as July 9, 1913. It must be self-evident that a sale of hops made on July 9th is no evidence whatever of market value six or eight months previously, especially in view of the testimony on the part of the Horst Company that the price of hops declined rapidly after November 4th, the date of the cancellation of the contract. Furthermore, the market value or price at Milwaukee, the place of delivery, was the criterion, and these sales were made in many different states, and even in the Dominion of Canada. For these reasons the testimony offered was incompetent and irrelevant, and should have been excluded.

[9, 10] The Horst Company offered testimony over objection tending to show that in a hop contract such as this, where no time of delivery is specified, it is customary to ship the hops during the shipping season of that year, which extends from the time of harvest up to the end of February or March of the following year. The contract in suit was canceled by the Brewing Company on the 4th day of November, 1912, and the complaint alleged a tender of performance, which must have been made at or about that time. The only purpose of fixing the date of delivery would be to fix a date for the ascertainment of the market price, and under the circumstances of this case that date should be fixed as of November 4, 1912, or soon thereafter. If it be urged that the Horst Company had the entire hop season within which to tender choice hops in compliance with the terms of the contract, even though the samples furnished were not of that quality, the answer is that there is no testimony tending to show that it could at any time tender or deliver hops of a quality superior to the samples. Indeed, all the testimony is clearly to the contrary. The evidence of custom was therefore irrelevant and immaterial.

The Brewing Company offered testimony tending to show the market value of Consumnes hops in November, 1912. The court rejected this testimony, on the ground that the offer of proof was not limited to *air-dried* Consumnes hops. This ruling was erroneous. It clearly appears from the testimony that all the air-dried Consumnes hops in existence were produced by the Horst Company, and that they had no market value as distinguished from other hops from the same district. The air-dried hops differed from the kiln-dried hops only in the matter of curing, and all the testimony shows that the market value of

the one is the same as the market value of the other, where the hops are equal in quality. Under these circumstances we think testimony as to the market price of Consumnes hops would be a material aid to the jury and that the evidence should have been admitted. This ruling is of little moment, because no testimony of any consequence was excluded by reason thereof.

Finally, the Brewing Company assigns as error the refusal of the court to submit its counterclaim to the jury. There is no merit in this assignment for two reasons: First, because the jury found that the contract was breached by the Brewing Company, and not by the Horst Company; and, second, because the testimony offered by the Brewing Company itself showed that it was benefited rather than injured by the breach, inasmuch as the market price of hops was considerably below the contract price.

We deem it unnecessary to discuss or consider the remaining assignments of error. If it be said that this court has considered objections to some of the testimony in addition to those urged in the court below, the answer is that these questions will necessarily arise on a retrial of the action, which must be ordered on other sufficient grounds.

For error in the admission and exclusion of testimony the judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.