## ROOMBERG et al. v. BORDEN et al.

(Circuit Court of Appeals, Third Circuit. September 17, 1923.)

No. 2999.

1. **Sales ⬤⟿89—Provision of contract fixing time of delivery held to have been waived.**

Under a contract for manufacture and sale of shirtings, "sample" shipments to be made in July and August, and "stock" between September 1 and December 31, the buyers, through correspondence, *held* to have waived shipment of samples in July and August, and not entitled to cancel the contract because they were not shipped prior to September 1.

2. **Sales ⬤⟿388—Instructions in action by seller for breach of contract held correct.**

Instructions in an action by a seller for breach of contract *held* to correctly state the rights of the parties under the contract.

3. **Sales ⬤⟿384(2)—Measure of damages for breach of contract by buyer stated.**

Under Sales Act Pa. 1915, § 64 (Pa. St. 1920, § 19712), where a buyer refuses to accept and pay for the goods, the seller may retain them and sue the buyer for damages for nonacceptance, and the measure of such damages is the difference between the contract price and the market price at the time or times when the goods ought to have been accepted.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by Bertram H. Borden and another, copartners as M. C. D. Borden & Sons, against Israel Roomberg and another, copartners trading as Roomberg Bros. Judgment for plaintiffs, and defendants bring error. Affirmed.

Joseph J. Brown and Henry P. Brown, both of Philadelphia, Pa., for plaintiffs in error.

William Clarke Mason and W. Heyward Myers, Jr., both of Philadelphia, Pa. (Morgan, Lewis & Bockius, of Philadelphia, Pa., of counsel), for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The writ of error in this cause was sued out to review a judgment of the District Court entered on the verdict of a jury. Bertram H. Borden and Howard S. Borden were plaintiffs and Israel Roomberg and Mark Roomberg defendants in the District Court and will be so referred to here. The suit arose over a contract of April 21, 1920, wherein the Bordens agreed to manufacture and sell and the Roombergs agreed to purchase 250,000 yards of shirt material known as "Plaza Pongee" at 30 cents a yard. The quantity was to be made up of 20 different styles, designated by numbers, of 12,500 yards each. "Sample" pieces of 150 yards of each style were to be delivered by plaintiffs during July and August, and the balance, designated "stock," was to be delivered at the mill and charged to defendants "when and as ready from September 1 to December 31, 1920." Plaintiffs shipped admittedly one (the exact number varying according to different evidence) sample *before* and a number *after* September 1,

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1920. They also shipped certain stock, but defendants on September 16, 1920, wrote a letter, of which the following is a copy, refusing to accept and pay for any samples not shipped in July and August in accordance with the contract, and any stock, samples of which had not been shipped in July and August:

"In looking over your bills mailed by you for samples, we find that you have shipped us 5 styles during July and August; whereas, we should have received 20 styles, as ordered. Though we placed the order on April 21st, in order to give you ample time to ship all the styles due in these two months, yet we have received only 5 styles. Another 5 styles shipped by you in September, this we cannot use, as they are too late for us. When we placed our order on April 21st, we specified that our samples, 150 yards of each style, to be delivered during July and August, and what you did ship is only the 5 styles mentioned above.

"We will return the goods billed by you in September, as soon as they will arrive, as we cannot represent them in our line of samples; as stated before, they are too late, and not as agreed upon. We will ask you kindly to cancel all goods, except the 5 styles shipped to us during July and August. We also find that some pieces have oil spots, not on the top of the piece, but inside, and some pieces run darker and some lighter in shade."

In the face of this letter, the plaintiff continued to manufacture the material covered by the contract, and delivered, or offered to deliver, it at the "mill," the place designated for delivery in the contract; but the defendants, as announced in their letter, refused to accept it. The price of the material had at and before this time fallen. The plaintiff sued for breach of the contract, and claimed as damages the difference between the contract price and the market price at the time and place of delivery of the material the defendants refused to accept and pay for. The jury returned a verdict for plaintiffs, and defendants have brought the case here on writ of error, based on 14 assignments, and urge with great earnestness that the judgment should be reversed for three principal reasons.

[1] The first reason is that the jury should have been instructed that the defendants were not obliged to accept or pay for any *stock* of which *samples* had not been delivered prior to September 1, 1920. The trial judge was requested so to charge the jury, but refused. The contract required the plaintiffs to deliver samples of all the stock in July and August. The request should have been charged, unless the requirement was waived. This conclusion the trial judge reached, but he held that the requirement had been waived, and this he concluded principally from his interpretation of the correspondence between the parties. On July 21, 1920, defendants wrote plaintiffs:

"Our Mr. Roomberg has just returned from a trip and he found that no one will buy now for future deliveries. Indications are that this season will be an extra late season, as the customers, it seems, are taking their time to buy goods, and with the banks still tighter with accommodations, and with slow collections, we would ask you kindly to postpone the shipments of goods till later, as we cannot see our way clear to receive goods just now and to store them, which is a thing we cannot do for the various reasons mentioned above."

This letter was answered the following day:

"Replying to your circular letters of the 21st inst., would say that the only goods due you are for next spring, delivery commencing in September, and these will be invoiced accordingly. We will, however, disregard your

recent request to ship one case each style as soon as possible; this, of course, until further notice."

The defendant replied the next day, July 23, 1920, as follows:

"Replying to yours of July 22, would say that we note what you say, that you will disregard our recent request to ship one case each style as soon as possible. We would also ask you to ship no goods in September, as we contemplate to let you know in August when to commence to ship goods and what styles we would want first, as by that time we will know how soon our customers will buy."

On July 27, 1920, plaintiff wrote saying:

"We acknowledge receipt of your favor of the 23d instant, and in reply beg to state that we will commence invoicing the goods due you on back orders on September 1st, in accordance with contract, holding same for your shipping directions."

Three days later the defendants again wrote:

"We herewith wish to call your attention again to the fact that, in view of the present market conditions, and with collections very slow, and with not much accommodations from the banks, also a good many cancellations on goods in process of making, and not a single dozen shirts sold for the year of 1921, we find ourselves very much handicapped, as you perhaps will most certainly agree with us. As we buy our goods six months ahead of time, we did not think for one moment that we would be in such a predicament that we will not be able to use all the goods placed on order with you next year.

"We also wish to impress upon you that this is not a question of prices, as explained to you by our Mr. M. Roomberg when he called to see you in New York, but it is merely the fact that we hope we could meet our obligations when due, and, as explained previously, we cannot see our way clear to do so under prevailing conditions, and we would kindly ask you to cancel the complete order and send us a confirmation for half the quantity ordered, and we hope to meet this obligation, as we hope for market conditions to righten itself."

Plaintiffs, answering next day, said:

"We acknowledge herewith receipt of your favor of the 30th ult., wherein you again take up the matter recently discussed with your Mr. Max Roomberg. We have noted very carefully the situation as you describe it, but nevertheless we cannot at this time permit you to violate any of your obligations with us for next spring. We desire to add that we will take this matter up further at a later date, and if we then find it possible to entertain your suggestion, please be assured that we will gladly do so."

This letter was followed on September 16, 1920, by the letter quoted above, canceling the entire contract, except samples shipped in July and August and the stock from those samples.

Did the learned trial judge correctly interpret this correspondence? The contract used the distinguishing terms of "samples" and "stock," but these words are nowhere used in the correspondence. The word "goods" is used instead, and the question is whether "goods" refers to "samples," to "stock," or to both. In the letter of July 21, 1920, defendants said:

"We would ask you kindly to postpone the shipments of *goods* till later, as we cannot see our way clear to receive *goods just now* and to store them."

At that time not a single sample had been shipped, but any and all of the samples might have been shipped under the contract. Not only

had no stock been shipped, but none could be shipped, at that time, in accordance with the terms of the contract, and the evidence does not show that the plaintiffs at that time intended to anticipate the time specified in the contract for shipping "stock." "To postpone the shipments of goods" means the "goods" requested, which might then be, and the defendants expected would be, shipped in accordance with the terms of the contract. There is no hint that this request was outside of, or a modification of, the contract, and so the "one case of each style" must refer to "samples" which plaintiffs then had the right to ship, but none of which had been shipped. Mr. Roomberg had just returned from a trip, visiting customers, and had "found that no one will buy now." Consequently they did not need and could not use the "samples," and so asked plaintiffs "kindly to postpone" shipments.

Plaintiffs stated in reply that they would disregard the request to ship one case of each style, and that no (other) goods were due them until "commencing in September," when "stock" material might be shipped under the contract. In their reply on July 23, 1920, defendants noted that plaintiffs would not ship one case of each style as before requested, and "also," in addition, asked them not to ship any "goods" *in September*, thus distinguishing between "samples," that might be shipped at any time, notwithstanding their hurrying request, in July and August, and "stock," that might be shipped from September 1 to December 31, 1920. Defendants wrote again on August 30, 1920, stating that market conditions and collections were slow, and that "not a single dozen shirts sold for the year of 1921," and asked plaintiffs to cancel the entire order. In this letter, written one day before the expiration of the time for shipping samples, not a word was said about not receiving samples before, although only one sample, according to the stipulation of counsel, had then been shipped. It is clear that, owing to the decline in prices and general market conditions, defendants did not want any material, "samples" or "stock," shipped, and we think that their request to postpone the shipments of "goods" included "samples." Therefore they waived the requirement that they be shipped "during July and August," and cannot now defend on the ground that plaintiffs failed to perform that provision of the contract.

[2] The second proposition is the contra-positive of the first. It is contended that the first was an error of omission, and the second an error of commission. Was it error to charge that, if the plaintiffs had manufactured the goods, had appropriated them to the contract, and had them ready for shipment within the contract period, and were waiting to be notified by defendants, the verdict should be for plaintiffs? The contract provided that:

"Stock—To be charged when and as ready from Sept. 1st to Dec. 31st, 1920."

In their letter of July 23, 1920, defendants said:

"We would also ask you to ship no goods in September, as we contemplate to let you know in August when to commence to ship goods."

In reply plaintiffs stated that they would commence "invoicing the goods due you on back orders (samples) on September 1st, in accordance with the contract, holding them for your shipping directions."

The stock was to be "charged when and as ready," and defendants were to notify plaintiffs when to ship and what styles were first wanted. Consequently all the plaintiffs were required to do was to be ready to ship from September 1 to December 31, 1920, when notified by defendants to do so. This is substantially what the trial judge charged, and in doing so we do not think that he committed error.

[3] The third ground on which defendants contend that the judgment should be reversed is that, if plaintiffs were entitled to recover at all, they should have recovered the full contract price of the goods not shipped, and this recovery would have given defendants the right to the possession of the goods themselves. In other words, they contend that the judge erred in permitting the verdict for plaintiffs to stand, and in entering judgment for the difference between the contract price and the market price of the goods at the time the contract required the defendants to accept them.

In their statement of claim plaintiffs alleged that, on refusal to accept the goods, "defendants became liable to plaintiffs in damages equal to the difference between the market price of the said goods at the time they were made ready for delivery as aforesaid and the contract price therefor." Section 64 of the Sales Act of Pennsylvania of 1915 (Pa. St. 1920, § 19712) provides that:

"Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance," and "where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

The theory on which suit was brought and tried was that, on refusal of defendants to accept the goods, they became liable in damages for the difference between the contract price and the market price at the time and place of acceptance, as provided by the contract. This is in accord with the Sales Act of 1915 of Pennsylvania. Upon the refusal of a buyer to accept goods purchased and appropriated to the contract, the seller may pursue one of three courses: He may store or retain the goods for the purchaser and sue him for the contract price; he may sell them as agent for the purchaser and sue him for the difference between the contract price and the net proceeds of the resale; or he may retain the goods for himself and sue the purchaser for the difference between the contract price and the market price at the time and place of delivery fixed by the contract. Pabst Brewing Co. v. E. Clemens Horst Co., 229 Fed. 913, 144 C. C. A. 195. The plaintiff might have pursued any of these courses, but chose to pursue the last, and in doing so was within his legal rights.

We are satisfied that in the admission of evidence or charge to the jury no error injurious to defendant's rights was committed, and so the judgment of the District Court is affirmed.