## LINCOLN NAT. BANK OF PITTSBURGH et al. v. CONTINENTAL & COMMERCIAL NAT. BANK OF CHICAGO.

Circuit Court of Appeals, Third Circuit.
August 29, 1928.

No. 3691.

Davis, Fruit & Anderson, of Sharon, Pa., and Calvert, Thompson & Berger, of Pittsburgh, Pa. (George B. Berger, of Pittsburgh, Pa., and Eugene E. Anderson, of Sharon, Pa., of counsel), for appellants.

Alter, Wright & Barron, of Pittsburgh, Pa. (A. J. Barron, of Pittsburgh, Pa., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and BODINE, District Judge.

DAVIS, Circuit Judge. This is an appeal from a decree of the District Court, dismissing exceptions to the master's report and discharging the rule to reopen the report, allowing $50,000 damages to the appellee for a breach of contract by J. S. & W. S. Kuhn, Inc., hereinafter called the Kuhn Company.

On June 16, 1913, the Kuhn Company sold to the Continental & Commercial National Bank of Chicago, appellee, Hydro-Electric Company 6 per cent. interim certificates, valued at par at $250,000, at 98½, making a total purchase price of $246,250. The Kuhn Company agreed to repurchase these certificates from the appellee at the same price on December 16, 1913. The Kuhn Company became financially embarrassed, and on July 7, 1913, less than one month after the sale of the certificates, a receiver was appointed for the company. On December 16, 1913, the Chicago bank offered the certificates to the receiver of the Kuhn Company and demanded that he perform the contract of the Kuhn Company and purchase from it the certificates at the stipulated price. The receiver declined to do so.

On March 19, 1914, the bank and the receiver, with the authority of the court, agreed to exchange these Hydro-Electric certificates for notes of the West Penn Traction Company, which notes were to be "subject to all the same rights and obligations, if any, of the respective parties hereto." J. Wood Clark, Esq., was appointed special master on October 19, 1915, to pass on the claims of the creditors. On December 4th following the bank presented its claim to the master, and prayed that it be awarded $246,250, the purchase price of the original certificates, with interest, with a delivery by it to the receiver of the West Penn Traction Company notes, or that it

retain the notes and be awarded damages of $146,250, with interest from December 6, 1913, for the breach of the contract of the Kuhn Company or its receiver in not repurchasing the certificates.

On October 5, 1916, the master filed his report, wherein he found the market price or value of the certificates at the time of the breach, December 13, 1913, to be $78½ and accordingly allowed the bank $50,000 damages. This allowance was confirmed by the court on January 26, 1917. There was no appeal by any party from the decree confirming this allowance. The notes of the West Penn Traction Company began to increase in value, and on April 1, 1917, they were called and paid in full, with a premium of $30 per note. The bank thus received the full face value of the notes of $250,000 and $7,500 premium.

On May 5, 1917, the same term of court in which the master's report awarding the $50,000 damages to the bank was confirmed, the appellants filed their petition for a rehearing of the claim of the bank. This was denied by the master. The appellant filed exceptions to his report, and a petition to reopen the report in so far as it allowed $50,000 damages. The exceptions were dismissed, and the rule allowed on the petition was discharged.

The breach by the Kuhn Company to repurchase the certificates is admitted, and the substantial question here is the proper measure of damages. But before we reach that question the appellee says there is a technical one which is dispositive of the case:

No exceptions were filed to the master's report until after the term had ended in which it was filed. The report allowing $50,000 damages to the bank was filed October 25, 1916, in the May term of court of that year. No exceptions were filed or objections made to the report within that term. The report was confirmed. On May 5, 1917, two days before the November term of 1916 closed, appellant filed a petition to open the report. Equity rule No. 66 provides that:

"The master, as soon as his report is ready, shall return the same into the clerk's office and the day of the return shall be entered by the clerk in the equity docket. The parties shall have twenty days from the time of the filing of the report to file exceptions thereto, and if no exceptions are within that period filed by either party, the report shall stand confirmed. If exceptions are filed, they shall stand for hearing before the court, if then in session, or, if not, at the next sitting held thereafter, by adjournment or otherwise."

While exceptions were taken to a number of other claims adjudicated and allowed by the master, "there was no exception of any kind taken by any creditor to the allowance of the claim of the Continental & Commercial National Bank." As no exceptions were filed to the separate adjudication and allowance of damages to the bank within 20 days after the report was filed, the report stood confirmed as to that item as of the date filed. The court dismissed the exceptions to other claims and confirmed the report in full. An appellate court will not review an alleged error not brought to the attention of the trial court by a proper exception seasonably taken. Wyss-Thalman v. Maryland Casualty Co. of Baltimore (C. C. A.) 193 F. 53; Blisse v. United States (C. C. A.) 263 F. 961; Insurance Co. v. Folsom, 85 U. S. (18 Wall.) 237, 21 L. Ed. 827; Michigan Ins. Bank v. Eldred, 143 U. S. 293, 12 S. Ct. 450, 36 L. Ed. 162; O'Connell et al. v. United States, 253 U. S. 142, 40 S. Ct. 444, 62 L. Ed. 827; Exporters of Manufacturers' Products v. Butterworth-Judson Co., 258 U. S. 365, 42 S. Ct. 331, 66 L. Ed. 663. As no exception of any kind was taken within the term to the allowance of the $50,000 damages, we think that the case might be disposed of on this ground.

But, on the merits, should the court have reopened the decree? This depends upon whether or not the master erred in awarding damages for the breach of agreement in not repurchasing the interim certificates according to the agreement. The breach is admitted, and the appellee was entitled to damages. The measure of damages is the question to be decided. The general rule of law is that the appellee was entitled to the difference between the price at which the Kuhn Company agreed to repurchase the certificates and the market price at the time and place they were to be repurchased. But the appellant says this rule does not apply in the case of the sale of specific property at a fixed price, as here, and that the appellee's sole remedy was to hold the certificates for the account of the receiver and sue him for the entire purchase price. This it had the right to do. It could have insisted on the contract price of the certificates as a measure of damages, and have held the certificates for the account of the receiver; but that remedy is not exclusive. It could at its option have

sold the certificates at the fair market price, and sued the receiver for the difference between it and the agreed repurchase price, or it could have kept the certificates on the refusal of the receiver to repurchase them, and recover as damages the difference between the agreed repurchase price and the market price at the time and place of delivery. In the case of Roomberg v. Borden (C. C. A.) 292 F. 321, 325, we said:

"Upon the refusal of a buyer to accept goods purchased and appropriated to the contract, the seller may pursue one of three courses. He may store or retain the goods for the purchaser and sue him for the contract price; he may sell them as agent for the purchaser and sue him for the difference between the contract price and the net proceeds of the resale; or he may retain the goods for himself and sue the purchaser for the difference between the contract price and the market price at the time and place of delivery fixed by the contract. Pabst Brewing Co. v. E. Clemens Horst Co., 229 F. 913, 144 C. C. A. 195. The plaintiff might have pursued any of these courses, but chose to pursue the last, and in doing so was within his legal rights."

The appellee here had the right to select which it would do. This rule applies to specific as well as to general property. Section 1378; [1916] L. R. 1 App. Cas. 175; Seward v. Pennsylvania Salt Manufacturing Co., 266 Pa. 457, 461, 109 A. 617; Mindlin et al. v. O'Boyle et al., 278 Pa. 212, 216, 122 A. 294; Frank Pure Food Co. v. Dodson et al., 281 Pa. 125, 129, 126 A. 243. In the case of Pabst Brewing Co. v. E. Clemens Horst Co., 229 F. 913, 916, the Circuit Court of Appeals for the Ninth Circuit said, upon a breach of the contract of sale by the purchaser, the seller may retain the property for the purchaser, or he may resell it as his agent. "But it is not obligatory upon him to adopt either of these courses, and if he does not care to do so he is entitled to recover the difference between the contract price and the market price or *value* of the property at the time and place of delivery fixed by the contract." The certificates in the instant case were not sold at the time of the breach of the contract to repurchase, but the rights of the appellee were fixed at that time. Since the certificates were not sold, and we do not have their market price fixed and tested by actual sales, it was necessary to find their market "value."

The question then arises as to whether or not, in awarding damages, the true mar-ket value at the time and place of the breach was ascertained. The certificates were valued at $78½ per share. In fixing the price of the certificates and the amount of damages, counsel for appellee, at the hearing of the master to fix the amount of damages, stated that he was willing to adopt the highest price at which it could be shown that any sales had been made between the time of the failure of the Kuhn Company and December 16, 1913, at which time the company was to redeem the certificates. No price could be found that was satisfactory, and finally counsel for appellee stated that he was willing to stipulate that, on the date that the certificates were to be purchased and delivery made, they were worth $78½ per certificate. All parties concerned seemed perfectly satisfied with this price. The receiver testified that in his judgment $78½ was a fair "market value" of those notes on the 16th of December, 1913. Upon a review of the whole case, we think that the evidence clearly shows that the market price of the certificates was not more than $78½ on December 16, 1913, and we seriously doubt that the value was that much. The fact that these certificates were subsequently exchanged for the notes of the West Penn Traction Company, which thereafter increased, and enabled the appellee to make a profit rather than sustain a loss on the entire transaction, is not material in this case. If the appellee had sustained a loss, because of the exchange, rather than made a profit, no one would contend that the receiver or appellant must bear that loss. [1916] 1 App. Cas. 175.

We do not find that the District Court erred in dismissing exceptions to the master's report, and in discharging the rule to reopen his original report allowing $50,000 to the appellee.

The decree is affirmed.