ARTHUR H. LAMBORN and Others, Copartners Doing Business under
the Firm Name and Style of LAMBORN & Co., Respondents, *v.*
THE NATIONAL PARK BANK OF NEW YORK, Appellant.

First Department, February 20, 1925.

Banks and banking — letters of credit — action to recover amount of
draft presented for payment against letter of credit and refused —
letter by defendant under date of May 5, 1920, constituted confirmed
letter of credit — absence of date of expiration does not affect validity
— subsequent requests by plaintiffs to change terms of shipment,
insert place of shipment and fix expiration did not reject letter — con-
tract called for shipment of sugar from Java in August and September,
1920 — credit was established by first letter and not by all correspond-
ence — statement by defendant that it could not extend " validity " of
letter from October first to December thirty-first referred to date of
shipment — plaintiffs did not agree to expiration on October 1, 1920 —
letter did not expire until reasonable time after last date on which
shipment could be made — three months is reasonable time in this
case — plaintiffs had right to show compliance with contract of sale —
defendant is liable.      ·

A letter written by the defendant to the plaintiffs referring to their credit No.
13840, in which they stated in effect that they had been advised by a Chicago
bank to open a confirmed credit in plaintiffs' favor with the Bankers' Trust
Company for a stated amount, payable against delivery of sight drafts with
invoices and bills of lading attached, covering Java white sugar f. o. b. cars
Philadelphia, shipments to be made during August and September, 1920, and
that it had advised the Bankers' Trust Company of the credit, but the advices
had been returned with the statement that the credit should be opened directly
with the plaintiffs, constituted in itself, under the facts in this case, a confirmed
letter of credit, and subsequent correspondence between the defendant and the
plaintiffs *does not form a complete letter of credit,* since it appears that the
letter in question contained all the essentials of a letter of credit and that
throughout all the transactions between the parties it was referred to as the
letter of credit.   The absence from the letter of the date of expiration of the
credit did not make the letter invalid.

Subsequent correspondence between the parties in which the plaintiffs requested
the defendant to change the terms of shipment from " August and September "
to " August and/or September " and to specify that shipment was to be made

from Java and to insert a date of expiration, which requests were rejected except as to the place of shipment, did not affect the letter of credit nor constitute a rejection thereof. So far as the time of shipment is concerned a contract calling for shipment in August and September is the same as one calling for shipment in August and/or September.

A statement in a letter written by the defendant to the plaintiffs, in answer to the plaintiffs' request that date of expiration be specified, that the defendant had no authority " to extend validity of this credit from October 1st to December 31st " did not refer to the expiration of the letter of credit, but merely to the date of shipment, and was, in fact, a statement that the defendant had no authority to permit the plaintiffs to ship later than September thirtieth.

Furthermore, it would be an unreasonable construction to say that this letter constituted a limitation on the expiration of the letter of credit so that it would expire October first, for the shipment in this case could have been made from Java at any time during the month of September, and it would be unreasonable to demand that the plaintiffs present bills of lading and shipping documents for a shipment from Java on the next day after the date of shipment when, in fact, a voyage from Java requires approximately seventy-four days.

If the three letters, which the defendant contends constitute the letter of credit, were to be construed as such, the letter remains the same as the first letter written with the exception that the place of shipment was added by a subsequent letter. The plaintiffs did not agree to the defendant's statement in one of these letters that the letter of credit would expire on the 1st day of October, 1920, and since no date of expiration was specified in the letter of credit, it did not expire until a reasonable time after the last date on which shipment could be made under the contract, and in this case a reasonable time is three months. Since the plaintiffs presented the shipping documents as required by the contract within that period they are entitled to recover the amount of the draft.

The plaintiffs had the right to show, under the circumstances of this case, that they fully performed the terms of the contract of sale, to cover which the credit was issued, and that the representations of fact set forth in the documents accompanying the draft were, as a matter of fact, true.

MERRELL, J., dissents, with opinion.

APPEAL by the defendant, The National Park Bank of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 31st day of May, 1924, upon the decision of the court rendered after a trial before the court at the New York Trial Term, a jury having been waived.

*Louis F. Doyle* [*Emmett F. Smith* of counsel], for the appellant.

*Van Doren, Conklin & McNevin* [*Louis O. Van Doren* of counsel; *Alfred C. B. McNevin* and *Edward S. Bentley* with him on the brief], for the respondents.

BURR, J.:

The action was brought to recover the sum of $79,623.24, the amount with interest of a draft drawn by Lamborn & Co. covering a shipment of sugar from Java, which was presented to the defendant bank for payment against a letter of credit dated May 5, 1920.

The letter of credit issued to Lamborn & Co., directly involved in the case at bar, is as follows:

" THE NATIONAL PARK BANK OF NEW YORK.
                                                    *" May 5, 1920.*
" Messrs. LAMBORN & COMPANY,
          " 132 Front Street,
                " City:
                " Re: Our Credit # 13840.

" GENTLEMEN.— We beg to advise you that we have received instructions from Greenbaum Sons Bank & Trust Co., Chicago, to open a confirmed credit in your favor with the Bankers Trust Co., for $79,685.76, payable against delivery of sight drafts with invoices and bills of lading attached covering 1650 bags about 224 lbs. each Java White Sugar at 22c per pound less 2% duty paid f. o. b. cars Philadelphia landed weights, shipments to be made during August and September 1920.

" We advised the Bankers Trust Co. of this credit our # 13840, but they have returned our advices, stating that credit should have been opened directly with you and not through them.

" Kindly advise us in this connection.

                " Very truly yours,
                        " (signed)   H. L. SPARKS,
                                " *Assistant Cashier.*"

After the receipt of this letter Lamborn & Co. wrote the defendant bank as follows:

                " LAMBORN & CO.
                      *   *   *

                " 132 Front Street
                     " New York
                                                    *" June 10, 1920.*
" NATIONAL PARK BANK OF NEW YORK,
          " # 214 Broadway,
                " New York City:

" GENTLEMEN.— We refer to your letter of credit # 13840, issued upon instructions from Greenbaum & Sons Bank & Trust Company, Chicago, for the account of Brodsky Gross, Chicago, Ill., for $79,685.76.

" You state that you advised the Bankers Trust Company, but that they returned your advices, stating that credit should be opened directly with us. This is correct. We beg to request that you issue this letter of credit for $79,685.76, setting expiration date of December 31, 1920. We also beg to call your attention to the fact that shipment should be August and/or September from Java.

" We regret that this matter has not been called to your attention at an earlier date, but would appreciate your cooperation in arranging details, so that they may be satisfactory to all concerned.

" Yours very truly,

" LAMBORN & COMPANY<br>" (signed) G. F. J. AMTHOR<br>" *Credit Department.*"

In answer to the foregoing letter the defendant bank wrote to Lamborn & Co. under date of June 11, 1920, the following letter:

" THE NATIONAL PARK BANK OF NEW YORK

" *June* 11, 1920.

" Messrs. LAMBORN & COMPANY,

" 132 Front Street,<br>" City:<br>" Re: Our Credit #13840.

" GENTLEMEN.— Referring to your favor of June 10th, relative to our confirmed credit #13840, we regret having to advise you that we have no authority to extend validity of this credit from October 1st to December 31st and would suggest your communicating with your customers and having corrected instructions sent to us. This also applied to the shipping period which in the instructions received by us specified August and September from Java.

" Very truly yours,

" (signed) H. L. SPARKS<br>" *Assistant Cashier.*"

The plaintiffs claim that the defendant's letter to plaintiffs, dated May 5, 1920, was a letter of credit, which was issued for a valuable consideration and contained no date of expiration; that it was a confirmed, irrevocable letter of credit available to plaintiffs, and the plaintiffs duly and timely presented the documents called for thereby and demanded payment of the accompanying draft. The defendant claims that the letter of May fifth is not a letter of credit; that at most it was merely a proposal looking to the issuance of a letter of credit; that if any credit was established by the defendant in favor of the plaintiffs, it was established as a result of all of the correspondence quoted above, and not merely by the first letter, and that by reason of the limitation contained in the letter of June eleventh, such credit was a credit expiring October 1, 1920.

The learned court below held that defendant's letter of May 5, 1920, was the letter of credit involved in this action; that it contained all the elements of a letter of credit; that it was issued

for a consideration; and that when issued there was a confirmed open letter of credit in favor of Lamborn & Co. covering the shipment mentioned and described therein.

The parties hereto stipulated on the record for the purpose of this trial as follows (the defendant reserving all objections to the relevancy and materiality of the facts stipulated):

1. " That the average time of a voyage of a freight steamer from Java to Boston, New York, Philadelphia or Baltimore, U. S. A., is seventy-five days after date of bill of lading," and

2. " That prior to the issuance of the letter of May 5, 1920, by defendant to the plaintiffs, the defendant was instructed on behalf of the vendee, Brodsky, Gross & Company, by their Chicago bankers, Greenbaum Sons Bank & Trust Company, to issue such a letter, and at the time it was the practice obtaining among banks to follow such instructions upon the implied understanding that the instructed bank was to look to the instructing bank for reimbursement and a reasonable compensation. There was no specific statement in the instructing letter   *   *   *   that reimbursement or compensation would be paid."

In view of the stipulation to the effect that this letter of credit of May 5, 1920, was issued by defendant bank for a consideration, no acceptance of the letter of credit was required on the part of Lamborn & Co. (See *Doelger* v. *Battery Park National Bank*, 201 App. Div. 515.)

The letter of credit of May 5, 1920, called for a reply from Lamborn & Co. on only one point, namely: Whether they were content to retain this letter as the obligation of the National Park Bank only, instead of its being also the obligation of the Bankers Trust Company (the latter banking corporation being the one named in the purchase and sale contract). Lamborn & Co. acceded to the substitution of banks, to taking the letter of credit from the National Park Bank alone, and so informed the defendant. This substitution of banks on the part of Lamborn & Co. at the suggestion or request of the National Park Bank constituted a consideration moving from Lamborn & Co. to the defendant bank for the issuance of the letter and thereafter the defendant bank could not have revoked the letter. (See *Hamer* v. *Sidway*, 124 N. Y. 538; *Werner* v. *Werner*, *No. 3*, 169 App. Div. 9.)

In *Werner* v. *Werner* (*supra*) this court, citing *Hamer* v. *Sidway* (*supra*), said (at p. 15): " The general rule is that there is a sufficient consideration for a promise if there is any benefit to the promisor or any loss or detriment to the promisee. There is consideration if the promisee does anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether

there is any actual loss or detriment to him or actual benefit to the promisor or not."

As was said by Mr. Justice GREENBAUM, writing for this court in *Doelger* v. *Battery Park National Bank* (*supra*): " The appellant argues that a letter of credit is an instrument in the nature of an option, which must be accepted by the performance of certain acts in accordance with its terms before a liability is fastened upon the issuer of the letter. But, assuming that this is a correct statement of the law, as applicable to certain kinds of letters of credit, the fact is that the letter under review was issued upon a valuable consideration and was declared to be irrevocable.

" The letter of credit upon which this action is based was a complete and independent contract between the plaintiff shipper and the defendant bank which issued it based upon a valuable consideration."

In the case at bar the letter of credit also was issued for a valuable consideration, and was called by the defendant bank its " confirmed credit #13840," in its letter of June 11, 1920. Regularly thereafter both plaintiffs and the defendant bank referred to the letter of May 5, 1920, and its serial number 13840, as the letter of credit covering the shipment. The stipulation in writing by the attorneys for the respective parties shows that a consideration moved to the National Park Bank " prior to the issuance of the letter of May 5, 1920, by defendant to the plaintiffs."

These facts effectually bind the defendant to the conclusion that the letter of May 5, 1920, was the letter of credit in this case. Furthermore, the stipulation shows that that very letter, or a letter in that form, was issued by the defendant bank in accordance with instructions and for value received. It is fair to assume such stipulation would not have been made if the instructions received by the National Park Bank had been different; therefore, it is a presumption conclusive against the bank that the letter of May 5, 1920, so far as it purported to give and set forth the instructions received by it, contained all of the instructions and contained them as received and on file.

In only one respect thereafter were those instructions amplified, namely, in the elucidation of the word " shipment " by describing the place wherefrom, *i. e.*, Java. As to this the National Park Bank said that that was and had been part of its instructions on file, and to that extent the letter of credit of May 5, 1920, was made more clear.

The fact that the letter of credit in suit contained no expiration date when issued did not impair its validity. Examples of such letters of credit are not lacking in the reports. (See *Border Nat.*

*Bank* v. *American Nat. Bank,* 282 Fed. 73, and cases there cited; *American Steel Co.* v. *Irving Nat. Bank,* 266 id. 41; *Krakauer* v. *Chapman,* 16 App. Div. 115; affd., 162 N. Y. 623; *Gelpcke* v. *Quentell,* 74 id. 599.) The argument that it was a "tentative," "provisional" or "proposed" letter of credit, that no actual letter of credit existed, is destroyed by the facts of this case — among other things by the bank's own declaration when it refused to pay the draft when presented:
                                    "*December 28th,* 1920.

"Letter of credit #13840 against which the attached draft is drawn expired by limitation October 1st, 1920. Therefore payment of the draft must be declined by us.

"THE NATIONAL PARK BANK OF NEW YORK."

The bank refused to pay the draft upon one ground only, namely, that the letter of credit had expired. It did not deny that there was a letter of credit. It rested its case on the alleged expiration of the letter of credit and on that alone. If the letter of May 5, 1920, was the letter of credit in this case, issued, as has been stipulated, in accordance with instructions received and for a valuable consideration, its issuance and existence were facts accomplished and they were not undone because of the requests regarding the instrument set forth in the letter of Lamborn & Co. of June 10, 1920; nor can that letter be deemed to have obliterated the existing letter of credit without doing violence to the clear intention of the letter of June 10, 1920, and setting at naught all of the subsequent repeated references of the parties to the said existing letter of credit by its serial number.

In the letter of June 10, 1920, Lamborn & Co. accepted the defendant's letter of credit direct, in lieu of one through the Bankers Trust Company. Lamborn & Co. asked the bank to insert into the letter of credit a provision fixing a definite time of expiration or limitation. This was refused by the bank.

It may be assumed that Lamborn & Co. preferred a fixed date far enough off, rather than no date stated, and thus to avoid and render unnecessary any question or determination later on as to what was "a reasonable time." It was not a request for an extension of any period of time or date already stated in the letter of credit. Lamborn & Co. asked the bank to define more accurately the place where shipment mentioned in the letter of credit was to be made, *i. e.,* from Java. This was agreed to by the bank. Lamborn & Co. asked the bank to insert a vertical dash and the word "or" after the word "and" between the words "August" and "September" so that the phrase should read: "August and/or September." This was refused by the bank.

First Department, February, 1925.     [Vol. 212

The claim that the foregoing amounted to a rejection of the letter of credit is without any foundation. The requests related to an existing "issued" document and were an acknowledgment of its existence and an adoption thereof rather than a rejection. The bank's refusal of the limitation did not put a limitation in the letter. It kept one out. The bank's granting the request to add the words "from Java" put them in. One party asked for it, and the other party consented to it. Finally, the bank's refusal to put into it the vertical dash and the disjunctive "or" left the letter of credit without those symbols, literally speaking. As a matter of law, however, they were already there. The request was superfluous. "And" is considered also as "or" unless the document shows on its face that the word "and" is to be literally construed. And it has been specifically so held where the shipment provision of a contract was under consideration. (*Bahnsen & Co., Inc.,* v. *Leaf,* 203 App. Div. 618; *Crown Embroidery Works* v. *Gordon,* 190 id. 472; *Morel* v. *Stearns,* 37 Misc. 486; 43 id. 639; *Roomberg* v. *Borden,* 292 Fed. 321; *Bradlee & McIntosh Co.* v. *Frey & Son, Inc.,* 280 id. 375.)

In *Crown Embroidery Works* v. *Gordon (supra)* there was an order for 10,000 yards of cloth to be delivered "in the months of June, July and August, 1918." This court said, per LAUGHLIN, J.: "There was no agreement to deliver a specified quantity in any month and there is no allegation with respect to when the deliveries were made, or to the effect that defendants were in default prior to the last day for deliveries, specified in the contract. It must be assumed, therefore, that defendants had until the last day of August to deliver the remainder. * * * The defendants had until the last day of August to perform."

In *Morel* v. *Stearns (supra)* the contract provided, "deliverable — April & May, 1900." The Appellate Term on the second appeal *(supra),* per Mr. Justice SCOTT, said: "The contract called for delivery during April and May. * * * If the six bales should be tendered before the end of May, the defendants would be bound to receive them."

These cases were cited with approval by this court in *Bahnsen & Co., Inc.,* v. *Leaf (supra).*

So that the letter of credit of May 5, 1920, as thus amended at the request of Lamborn & Co., stood exactly as it did at the time of its issuance except that as an instruction received, but not previously fully stated to the recipients, the words "from Java" were now to be read therein.

If, as the appellant contends, the three letters of May 5, June 10 and June 11, 1920, must be taken together to constitute the letter

of credit in this action, nevertheless, when those rules of construction which alone are reasonable and legal in this cause are applied to the letters, the result is to exclude from the credit the defendant's claimed date of expiration, October first, and to leave the letter of credit thus constituted without a stated date of expiration.

We think there are clear and decisive answers to the defendant's contention that, assuming there was a letter of credit, it must be spelled out of the three letters, May 5, June 10 and June 11, 1920, and that, as thus spelled out, it contained the date of expiration, to wit, October 1, 1920. One is that the letter of credit *per se* in this case was the letter of May 5, 1920, an issued, completed, confirmed letter of credit just as the bank thereafter termed it, and that the following letters affected it only where the parties by mutual consent modified the provision for shipment by enlarging the definition thus, " from Java." The trial justice held that the bank which had issued a letter of credit could not thereafter radically or materially change any of its provisions of its own motion; that while the parties thereto, the issuing bank and the beneficiary, might lawfully by mutual consent modify or amend or correct an existing letter of credit, one of the parties alone could not change an executed and delivered instrument.

Another answer to the appellant's contention that by taking the three letters, May fifth, June tenth and June eleventh together, the letter of credit was accepted by Lamborn & Co. with the expiration date of October 1, 1920, is found in the rule that the bank's writings must be taken most strongly against it, and must be construed so as to be reasonable and consistent and their intent deemed to have been an honorable and honest one. (*Doelger* v. *Battery Park National Bank, supra; Gillet* v. *Bank of America,* 160 N. Y. 549; *Schneider* v. *Vietor,* 208 App. Div. 624.)

In *Gillet* v. *Bank of America (supra)*, where an agreement for collateral security on a form prepared by the bank was under consideration, the court said (at p. 554): " If there is any uncertainty or ambiguity as to the meaning of the agreement, it should be resolved in favor of the plaintiff, as it was the defendant who prepared this contract. If there is any doubt as to the meaning of the terms employed, the defendant is responsible for it as the language is wholly its own."

In *Doelger* v. *Battery Park National Bank (supra)* this court said (at p. 520): " It also should be borne in mind that the letter of extension was written by the defendant, and, therefore, should be most strictly construed against it." And in the recent case of *Schneider* v. *Vietor (supra)* this court said (at p. 626): " More-

over, the rule is applicable that the construction most favorable to the plaintiff of which the contract reasonably is susceptible should be adopted, since the words were chosen by the defendant."

Apparently it is the position of appellant, however, that by taking the three letters and composing a letter of credit therefrom, October 1, 1920, would be established in the letter of credit as the date of the expiration thereof, by consent or acquiescence of Lamborn & Co.

While general rules of construction undoubtedly exist, and while one of them is that all of the documents on a given subject must be construed together, it is also true that general rules of construction yield to, and must themselves be applied by means of those special rules of construction which the precise facts of the case *sub judice* demand. The rule of construction should not be applied to this controversy which would work the result that in the very correspondence designed to create a letter of credit, the parties had adopted an element which would effectually destroy the letter of credit itself, and make it inoperative and useless.

It is claimed that the words in the letter of June eleventh, " We have no authority to extend validity of this credit from October 1st to December 31st," inserted into the letter of credit in this case the date of its expiration. We believe that they did not, and were not designed so to do. They leave little doubt that when Lamborn & Co. suggested a definite date of expiration, December 31, 1920, coupled with the insertion of the words " and / or," and again coupled with the fact of shipment from Java, the writer of the letter of June eleventh meant by the phrase above quoted to say no more than: " Our instructions are for shipment from Java, but we have no instructions to extend the period of shipment beyond October 1st." That, we believe, is what the writer meant by " extending the validity " of the letter of credit. The word " validity " as here used should be taken as putting a limitation on shipment rather than on payment. If Lamborn & Co. had not made shipment between July thirty-first and October first, exclusive, the letter of credit would have had no validity of which they could avail. (*Doelger* v. *Battery Park National Bank, supra.*)

It cannot be held or assumed that the writer of the bank's letter of June eleventh was ignorant of the location of the island of Java; therefore, it cannot be held that in admitting the bank's instructions were that shipment from Java might be made as late as September 30, 1920, he was at the same moment of the belief that the expiration of the letter of credit to pay for that shipment was to be the following day. What the phrase means in the letter is: " We inform

you by this supplemental letter that our instructions were that the shipment mentioned in our letter of credit was to be from Java, but that fact and these additional instructions are not to be taken to extend the time of shipment after September 30th." This construction was the one which Lamborn & Co. alone were obliged to draw from the bank's letter of June eleventh, and not the conclusion that the National Park Bank, in stating that its letter of credit was issued to cover a shipment from Java, competent to be made as late as September 30, 1920, was issuing a letter of credit expiring within the next twenty-four hours. To argue otherwise is to impute to the bank the intent of deliberately wrecking the letter of credit while pursuing an ostensible course of creating it.

In *Border Nat. Bank* v. *American Nat. Bank (supra)* the defendant bank attempted to defeat the action on its letter of credit by the assertion that it was a guaranty and, therefore, *ultra vires*, being a national bank, but the court would not adopt this suggestion or sanction the claim, saying (at p. 78): " It was the intention of the parties to the sugar contract to secure it by a letter of credit. Maldonado & Co. required that form of security as a condition precedent to their offer. That offer was accepted by De Bona as made. The American Bank was also making the same requirement. The Border Bank was fully cognizant of the correspondence between the parties to the sugar contract. It therefore knew of the requirement that a letter of credit be furnished. It would be imputing bad faith to the Border Bank to conclude that it deliberately attempted to substitute a guaranty for a letter of credit."

We should not indulge in an unreasonable construction of the bank letter of June 11, 1920, that is, a construction which would negative the letter of credit or place Lamborn & Co. in an impossible position. As was said by the Court of Appeals in the case of *Gillet* v. *Bank of America (supra,* at p. 557): " We find nothing in the agreement that would justify any such harsh and unreasonable, if not absurd, construction. When we consider the character of the business in which the parties were engaged, the relations between them, and the obvious purpose for which the collateral security was given, it is quite manifest that no such intention existed in the minds of either.

" Where there is uncertainty or doubt as to the meaning of words or phrases used in a contract, in seeking for the intent of the parties as evidenced by the words used, the fact that a construction contended for would make the contract unreasonable and place one of the parties at the mercy of the other, may properly be taken into consideration."

And in *Aldrich* v. *New York Life Insurance Company* (235 N. Y. 214) it is stated: "A construction which makes the contract fair and reasonable will be preferred to one which leads to harsh and unreasonable results."

The foregoing particular rules of construction must, we believe, be applied to these three letters, because if not applied the result is a complete *reductio ad absurdum* in view of the stipulation that the average length of the voyage from Java to Philadelphia of this cargo of sugar was seventy-five days, in view of the fact that there are only sixty-one days in August and September taken together, in view of the fact that the bank admitted that its instructions covered shipment from Java, and in view of the fact that this letter of credit was intended by both parties to cover that shipment.

It follows, therefore, that if we take all three letters, May fifth, June tenth and June eleventh, for the purpose of gathering therefrom the totality of instructions received by the bank and on its files as constituting the letter of credit in this case, the same remains in precisely the same form as the letter of May 5, 1920, with the words " from Java " added thereto to make it clearer.

It was not until the letter of credit had been issued without expiration date, not until after Lamborn & Co. had requested or suggested that it contain a definite expiration date, that the National Park Bank wrote the letter of June 11, 1920, containing the expression: " We have no authority to extend validity of this credit from October 1st to December 31st." Up to this time there had been no mention of October first, no one had asked for any extension of any existing period of time, and the quoted remark of the bank in its letter of June eleventh, as to extending the validity of the credit, was for all that appears in the correspondence, and for all that was shown on the trial, to say the least, misleading.

Plaintiffs did not remain silent regarding the bank's attempt to put an expiration date in an issued letter of credit. The argument that because the bank on June 11, 1920, for the first time inserted, as appellant contends, the expiration date of October first in its issued letter of credit, therefore, the letter of credit expired on that date because Lamborn & Co. acquiesced in the bank's attempt, is destroyed by the simple fact that Lamborn & Co., as shown by the evidence, did not acquiesce; they repudiated the attempt on the part of the bank. The correspondence between Lamborn & Co. and the bank regarding this letter of credit did not end with the bank's letter of June 11, 1920. Before the bank under date of October 1, 1920, wrote to Lamborn & Co. stating that the letter of credit had expired, Lamborn & Co. and the bank had exchanged four letters which are of importance.

Under date of August twenty-fifth the bank wrote the following letter to Lamborn & Co. regarding this letter of credit, No. 13840:

"THE NATIONAL PARK BANK OF NEW YORK.

"*August* 25, 1920.

" Messrs. LAMBORN & COMPANY,
     " 132 Front Street,
          " City:

" DEAR SIRS.— Referring to our credits numbered 13840 and 14031 opened in your favor by the Greenbaum Sons Bank & Trust Company of Chicago, Illinois, we beg to advise you that our correspondents have to-day telegraphed us directing that payments be suspended until further notice.

" Please advise us if this arrangement has your consent.

          " Yours very truly,
               " (signed)   H. L. SPARKS,
                    " *Assistant Cashier.*"

This letter was a plain recognition of the existence of a letter of credit No. 13840. It also showed that the bank was well aware that any alteration in its terms as issued could only be effected through Lamborn & Co.'s consent.

Two days later the bank again wrote to Lamborn & Co. the following letter:

"THE NATIONAL PARK BANK OF NEW YORK.

" Messrs. LAMBORN & COMPANY,          " *August* 27, 1920.
     " 132 Front Street,
          " City:

" DEAR SIRS.— Referring to our letter of August 25th in which we advised you that the Greenbaum Sons Bank & Trust Company of Chicago had directed us to suspend payments under our credits numbered 13840 and 14031 until further notice, we would point out to you that apparently we have not received your consent to this arrangement.

" We are to-day in receipt of a letter from our correspondents in which they explain that their clients, Messrs. Brodsky, Gross & Company, wish to examine all documents presented before authorizing payment. In other words, they evidently expect that you will surrender the documents to us for forwarding to our Chicago correspondents, and that your customers are to have the privilege of examining these documents before authorizing payment.

" Awaiting an expression of your views on this subject, we remain

          " Yours very truly,
               " (signed)   H. L. SPARKS,
                    " *Assistant Cashier.*"

This letter again was clearly a recognition of the letter of credit and the necessity for Lamborn & Co.'s consent to any alteration in its terms, and in plain language it conveyed to Lamborn & Co. information that the purchasers, Messrs. Brodsky, Gross & Co., were demanding through the bank a new right or new provision in the purchase and sale contract, and a suspension of payment of the letter of credit on the part of the bank until they had secured their new demand.

Lamborn & Co. answered this letter under date of August 31, 1920, in which they said (omitting therefrom certain clauses which relate to another letter of credit):

" GENTLEMEN.— With regard to your confirmed letter of credit #13840 which you advised was issued in accordance with instructions received by you from Greenbaum Sons Bank & Trust Company, Chicago, Ill., in our favor, covering a purchase from us by Brodsky, Gross & Company, Chicago, Ill., of 1500 bags of Java White Sugar 10% more or less at 22c per lb., less 2% duty paid, f. o. b. cars Philadelphia, Pa., landed weights, shipment during August or September, 1920, from Java, which shipping point you confirmed to us under date of June 11th, 1920, as it is our intention to comply fully with all of the terms and conditions of the contract covered by this letter of credit barring unforeseen circumstances which form part of the contract, we will under no circumstances agree to either the suspension of payment or the cancellation of this letter of credit.

" As this letter of credit shows no definite date of expiration, and as the sugar was sold the consignee on the basis of f. o. b. cars Philadelphia, Pa., landed weights, shipment from Java during August or September, 1920, we will look to you for payment of our sight drafts when accompanied by invoices, landed weight certificate and Railroad Bills of Lading blank endorsed. * * *

" We feel that the position taken by us is fully justified, and you can communicate our decision to Greenbaum Sons Bank & Trust Company, Chicago, Ill., accordingly.

" Yours very truly,
" LAMBORN & COMPANY
" (signed)   G. F. J. AMTHOR,
*Credit Department.*"

" PJB /FB

In this letter Lamborn & Co. very plainly called to the bank's attention its " confirmed letter of credit #13840 " as issued to them in accordance with instructions received by the bank, stated the sum and substance of those instructions, gave their construction of the bank's letter of June 11, 1920, as simply confirming the shipment point, *i. e.,* from Java, and plainly informed the bank

that it was Lamborn & Co.'s intention to comply with all the terms and conditions of the contract, and declared that they would under no circumstances agree either to the suspension of payment or to the cancellation of the letter of credit. In the face of this announcement from Lamborn & Co. any claim that by silence they acquiesced in the defendant bank's attempt on June 11, 1920, to insert October first as the date of expiration of this letter of credit must fall down for lack of support.

If the National Park Bank on receipt of Lamborn & Co.'s letter of August 31, 1920, intended to take the position that there was no letter of credit because the bank insisted that they had made it expire October first, and Lamborn & Co. insisted that it was without date of expiration, then was the time for the bank to take that position and make that claim, because if they had done so Lamborn & Co. could then have changed their position and either have obtained another letter of credit or canceled the contract with the purchaser because the purchaser refused to post the letter of credit called for by the contract. This the bank did not do. It wrote to Lamborn & Co. a letter dated September 2, 1920, as follows:

"THE NATIONAL PARK BANK OF NEW YORK

*September 2nd,* 1920.

" Messrs. LAMBORN & COMPANY,

" 132 Front Street,

" New York City:

" Attention Credit Department.

" GENTLEMEN.— We received this morning your letter dated August 31st in regard to the credits opened in your favor under instructions from the Greenbaum Sons Bank and Trust Company, Chicago, and bearing our numbers 13840 and 14031 and we note your intention to present proper documents within the terms and time limits of these credits if possible.

" Regarding your remarks concerning the expiration date of credit #13840, we beg to call your attention to the fact that in the course of our correspondence with you regarding this credit the expiration date of October 1st is given and it was in connection with this that you requested us to ask our Chicago correspondent to obtain an extension to December 31st if possible. We made the request but the extension was not granted.

" Very truly yours,

" (signed)   H. L. SPARKS,

" HJS:R                              *Assistant Cashier.*"

Having failed to take that position at that time the result of the correspondence was this:

1. Neither party denied the existence of a letter of credit; on the contrary, each party admitted there was one No. 13840.

2. The bank made the claim that in the course of correspondence about the letter of credit an expiration date — October 1, 1920 — had been given.

3. Lamborn & Co. claimed that the said alleged expiration date had not been inserted in the letter of credit and that it was without date of expiration.

4. Both parties stood on their respective rights.

5. The bank waited for October first and then declared the letter of credit had expired. Lamborn & Co. waited until the sugar had arrived from Java and then tendered a draft and shipping documents. The issue between the parties was thus framed by themselves and joined.

The question whether the defendant, appellant, could lawfully maintain that its letter of credit expired October 1, 1920, a date announced or " given " by the bank alone, and four or five weeks after issuing the letter of credit, was by common consent left for future determination. It was a justiciable question of law upon conceded facts; it was the question determined adversely to the bank by the court below.

A letter of credit is not required to be in any particular form. It may be said of the letter of May fifth in this case as was said by the court respecting the letter in *Second National Bank* v. *Columbia Trust Company* (288 Fed. 17): " The letter in substance, in effect, in intention and in conscience was a letter of credit."

The letter of May fifth was treated by both parties as a letter of credit. It was a confirmed irrevocable credit issued to plaintiffs by defendant for a valuable consideration and defendant thereafter could not change its terms without plaintiffs' consent. It named no expiration date. The law imports into it, therefore, continuance for a reasonable time. The sugar was to be shipped from Java August and/or September. This voyage required approximately seventy-five days. With allowance for ordinary contingencies December thirty-first was a reasonable date of expiration. The letter of June tenth was not a rejection of the confirmed irrevocable letter of credit of May fifth. The letter of June tenth was simply a request to fix a definite date where the existing letter of credit provided only for a reasonable expiration date. It was simply a request to modify an existing obligation. The later correspondence is mere reassertion by defendant that the expiration date was October first and is ineffectual to impair the obligation created by the letter of May fifth to continue the credit in force for a reasonable

time, and December thirty-first was such reasonable time, as the court below rightly held.

The case of *Moss* v. *Old Colony Trust Co.* (246 Mass. 139), relied upon by defendant, is not controlling authority on this court, nor are the facts of that case like the facts of the case at bar.

Plaintiffs had the right to show under the circumstances of this case that they fully performed the terms of the purchase and sale contract made with Brodsky, Gross Sons & Co., to cover which the credit was issued, and that the representations of fact set forth in the documents accompanying the draft were as a matter of fact true. It was not error to receive such evidence.

The court below in its opinion stated: "The correspondence relating to other letters of credit, introduced in evidence by plaintiffs, sheds no light on this transaction and has been disregarded." (123 Misc. 211.) No material error, therefore, was committed in receiving such letters in evidence.

We think the judgment rendered in favor of the plaintiffs by the court below was fully justified by the law and by the evidence and that such judgment in favor of the plaintiffs should be affirmed, with costs.

CLARKE, P. J., DOWLING and MCAVOY, JJ., concur; MERRELL, J., dissents.

MERRELL, J. (dissenting):

I must dissent from the prevailing opinion. I do not think the evidence established the issuance by the defendant of any confirmed letter of credit. The letter written by the assistant cashier of the defendant to the plaintiffs under date of May 5, 1920, does not, to my mind, constitute a letter of credit binding upon the defendant which rendered the defendant liable. In this letter of May 5, 1920, defendant's assistant cashier merely advised the plaintiffs that the defendant had received instructions from Greenbaum Sons Banking and Trust Company of Chicago to open a confirmed credit in plaintiffs' favor with the Bankers Trust Company for $79,685.76, payable against delivery of sight drafts, etc., " * * * shipments to be made during August and September, 1920."

The letter further stated that the defendant had advised the Bankers Trust Company of such credit, but that the same had been returned by the Bankers Trust Company upon the ground that the credit should have been opened directly with the plaintiffs and not through said trust company, and the defendant asks further advice in the matter. In reply thereto, on June 10, 1920, plaintiffs wrote the defendant, confirming the correctness of defendant's information and requesting the defendant to issue a letter of

credit for the above amount directly to the plaintiffs setting the expiration date of December 31, 1920, and also calling defendant's attention to the fact " that shipment should be August and /or September from Java." On the day following, on June 11, 1920, defendant's assistant cashier again wrote the plaintiffs in reply to their letter of June tenth that the defendant regretted having to advise plaintiffs that they had no authority to extend the validity of the credit from October first to December thirty-first, and suggesting that the plaintiffs communicate with their customers and have corrected instructions sent to the defendant, and advising the plaintiffs that that also applied to the shipping period which in the instructions received by defendant specified August and September from Java. It is very clear from this correspondence, which completed the transaction, that the minds of the parties never met on any credit as required by the plaintiffs in their letter of June 10, 1920. In this letter of June 10, 1920, the plaintiffs for the first time suggest that shipment of the sugar was to be from Java, and that they would require an extension of credit to December 31, 1920. Immediately upon receipt of this letter and upon the day following defendant notified plaintiffs that they had no authority to extend the credit to December thirty-first and could not do so except upon further instructions from plaintiffs' customers, and that the same also applied with reference to the shipment of the sugar from Java. To my mind there was a failure of proof showing the meeting of the minds of the parties to this transaction. The defendant never obligated itself to a confirmed credit to December thirty-first, as required by the plaintiffs. I think the correspondence between the parties not only failed to show the issuance of any confirmed credit by the defendant, but, on the other hand, clearly indicated that the defendant was unwilling, except upon further instructions, to extend credit beyond October first or that such credit should apply to sugar shipped from Java. Such instructions were never given. The plaintiffs were advised of defendant's refusal to furnish the required credit in ample time to obtain corrected instructions which would have protected the defendant or to have obtained credit in other quarters.

I think the judgment appealed from should be reversed, with costs, and that plaintiffs' complaint should be dismissed, with costs.

Judgment affirmed, with costs.