FAIR PAVILIONS, INC., Respondent, v. FIRST NATIONAL CITY BANK, Appellant.

First Department, November 9, 1965.

*Henry Lewis Goodman* of counsel (*Zalkin & Cohen,* attorneys), for appellant.

*Thomas F. Daly* of counsel (*William E. McCurdy, Jr.,* with him on the brief; *Lord, Day & Lord,* attorneys), for respondent.

STEVENS, J.  The defendant First National City Bank (Bank) appeals from an order entered February 4, 1965, insofar as said order denied its cross motion for summary judgment.

On October 15, 1963, at the request of one of its customers, Willard International Financial Co., Ltd. (Willard) Bank issued a clean irrevocable letter of credit in favor of respondent Fair Pavilions, Inc. (Pavilions) making available the total sum of $2,030,000, to expire at Bank's close of business on September 15, 1964.  The money was available to Pavilions in accordance with a schedule of availabilities, and subject to certain terms and conditions enumerated in the letter of credit.  Paragraph 6 of said letter provided in part: " It is a further condition of this Credit that any drawing available under this Credit after January 2, 1964 will be terminated and cancelled if our Travelers Letter of Credit Department receives, at least ten days prior to any such availability date, from an officer (or one describing himself therein as an officer) of Willard an affidavit to the effect that one or more of the events described in clause XV (' Owner's Right to Terminate the Contract ') of a certain contract, dated September 13, 1963, by and between Exhibitions and yourselves, including any amendments thereto, has occurred."

The reference to clause XV in quotation is a reference to a portion of a contract dated September 13, 1963, by and between Pavilions and Exhibitions de France, Inc. (Exhibitions) under which Pavilions engaged to construct a building for Exhibitions at the World's Fair.

Paragraph XV provides in part: " If the Contractor should be adjudged bankrupt, or if he should make a general assignment for the benefit of his creditors, or if a receiver should be appointed on account of his insolvency, or if he should persistently or repeatedly refuse and fail to supply enough properly skilled workmen or proper materials, or persistently disregard pertinent laws, ordinances, rules and regulations, or otherwise be guilty of a substantial violation of any provision of the contract, then the Owner [Exhibitions] may   *   *   *   terminate the employment of the Contractor [Pavilions] and take possession ".

In the contract between Willard and Exhibitions, dated September 20, 1963, under which Willard undertook to arrange an irrevocable letter of credit in favor of Pavilions in the amount of $2,030,000, it was stated: "It is understood that the credit may be terminated by the Bank *on the occurrence* of any of the events described in the September 13th agreement between Exhibitions and Fair Pavilions, Inc. at Clauses XV * * * and XVI." (Emphasis supplied.)

A reference appears in the record to a deletion of paragraph 6 from which the quoted language is taken and its replacement by conditions "as per the revised draft of October 11, 1963, R. F. Purcell, marked 'Exhibit E' and attached hereto." No such draft or exhibit is included in the record. Purcell was or is one of the attorneys for the defendant and it would seem that if a basic change had been effected in the underlying agreement such change could have been set forth by the defendant. Respondent in its brief refers to the replacement of paragraph 6 with an arrangement unknown to it. Since basically defendant's liability or nonliability is not dependent upon the language of the agreement between Willard and Exhibitions the reference is primarily for background information.

All of the payments called for in the letter of credit were made to Pavilions except the final payment of $400,000 listed in the schedule to be available September 1, 1964, with an expiry date of September 15, 1964. It is the failure of Bank to make such payment which gave rise to this action.

In a sworn affidavit dated August 10, 1964, transmitted to Bank by letter of the same date, Willard asserted: "One or more of the events described in clause XV ('Owner's Right to Terminate the Contract') of a certain contract, dated September 13, 1963, by and between Exhibitions and Fair Pavilions, Inc. have occurred." Thereafter, and by letter dated August 19, 1964, Bank informed Pavilions of the Willard letter and notified it that the drawing otherwise available for September 1, 1964 was terminated and cancelled.

It is undisputed that in fact none of the occurrences specified in clause XV had occurred and Pavilions was not in any way in default. Nor is it disputed that Willard agreed to indemnify the Bank for all amounts disbursed under the credit and to indemnify it for any losses suffered by reason of Bank being a party to the credit. The single question then is whether Bank owed any duty to Pavilions to investigate to ascertain the correctness of the asserted violation, or whether mere receipt of the affidavit effectually empowered it to cancel the credit and be relieved of any responsibility therefor.

The same general principles which apply to other contracts in writing govern letters of credit. As between the beneficiary and the issuer of the letter of credit, if ambiguity exists, then in construing such letter it is necessary to take the words as strongly against the issuer as a reasonable reading will justify (*Bank of Italy* v. *Merchants Nat. Bank,* 197 App. Div. 150, 154). While paragraph 6 of the letter of credit seriously impairs the element of irrevocability, it cannot be considered ambiguous. The provision that mere receipt of an affidavit from an officer " or one describing himself as an officer " is sufficient to cancel the credit and is so broad and its potentiality for abuse so vast, that the characterization of irrevocability becomes either a misnomer or an overgenerous description. In light of the fact that Bank was indemnified against all losses under the credit, it would seem to have had at least a moral obligation to point out the possible deficiency to the beneficiary in view of Pavilions' risk and exposure to possible damage. Pavilions could then have elected to accept or reject the proffered credit.

A letter of credit " means an engagement by a bank or other person made at the request of a customer * * * that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. A credit may be either revocable or irrevocable " (Uniform Commercial Code, § 5–103). As was pointed out earlier in referring to the contract between Willard and Exhibitions, in the absence of any possible limitation, Willard's right to terminate the credit depended " on the occurrence of any of the events " described in the agreement between Exhibitions and Pavilions. No such limitation appeared in the letter of credit. The condition there expressed was the mere receipt of an affidavit containing an assertion that the event had occurred. If this were not so, the irrevocable letter of credit could only have been modified or revoked with Pavilions' consent, or at the risk of exposure to liability for cancellation (*Lamborn* v. *National Park Bank,* 240 N. Y. 520; Uniform Commercial Code, § 5–106, subd. [2]; §§ 5–109, 5–115). Generally, courts are to avoid a construction of a letter of credit which would place a serious restriction upon ordinary business methods (*Bank of Italy* v. *Merchants Nat. Bank, supra*). Bank was not obliged to assume the burden of determining the accuracy of the representation (*Laudisi* v. *American Exch. Nat. Bank,* 239 N. Y. 234) but is only held to a fair import of its engagement (*Lamborn* v. *National Park Bank, supra*; see, generally, 9 C. J. S., Banks and Banking, §§ 175–183; 34 N. Y. Jur., Letters of Credit, § 4 *et seq.*).

The order appealed from should be modified on the law, the cross motion of Bank granted, and the order otherwise affirmed, without costs or disbursements to either party.

BREITEL, J. P., VALENTE, McNALLY and STEUER, JJ., concur.

Order, entered on February 4, 1965, so far as appealed from, unanimously modified, on the law, to the extent of granting defendant's cross motion for summary judgment, and, as so modified, affirmed, without costs or disbursements to either party.