Leonard Leigh Finz, J.
This is a motion for summary judgment pursuant to CPLR 3213 wherein the plaintiff seeks to recover judgment in the sum of $40,000 which it claims is due pursuant to a letter of credit issued to it by the defendant bank.
The history of the case is as follows: An action was instituted in Albany County to impress a trust on real property. The defendants in that case were one Samuel M. Berley and others, who will hereinafter be referred to as "Berley”. A lis pendens was filed against the property involved and Berley moved to vacate the lis pendens. The court granted the motion but as a condition thereof directed that a bond in the sum of $40,000 be posted to indemnify the plaintiffs in that action. On January 23, 1974, Berley delivered a certified check in the sum of $40,000 to the plaintiff who thereupon issued an undertaking sufficient in form to vacate the lis pendens.
Some time later, Berley delivered to the plaintiff a letter of credit issued by the defendant in the sum of $40,000. The said letter of credit was in a form required by the plaintiff but on the letterhead of the defendant. It was dated February 27, 1974 and was denominated "Irrevocable Straight Letter of Credit no. 551”. It agreed that the plaintiff could draw upon the defendant by sight draft up to $40,000 "by your written certification stating that you have incurred liability by reason of your execution of a bond on behalf of Mid Atlantic Land *966 Corporation”. This letter was to be effective until February 26, 1975 and further provided that it would be extended for an additional period of two years unless 30 days prior to the expiration date the defendant should give notice to the plaintiff that it had elected not to renew for the additional period. In the event of such notification, the plaintiff could draw by means of its sight draft the full amount of the credit upon certification that it had not been released from liability under the bond, that the funds will be used to meet the obligation of the bond, and that it would refund to the defendant any sums not used to meet its obligation under the bond.
Upon receipt of the afore-mentioned letter of credit, the plaintiff released to Berley the certified check originally deposited as collateral for the issuance of the bond.
On December 20, 1976, the letter of credit still being in force according to its terms and not having been canceled or withdrawn by the defendant, the plaintiff issued its sight draft in the amount of $40,000 drawn against the afore-mentioned letter of credit. The communication accompanying the draft advised that the plaintiff had incurred liability, had not been released of liability under its bond and agreed to apply the sum received under the draft to the payment of its liability and to refund any amount not so expended. The defendant, after consultation with its attorneys, rejected the draft and returned it to the plaintiff with a letter from its attorneys indicating that it would not be paid. Whereupon, the plaintiff instituted the within action and brings this motion for summary judgment.
The defendant, in its affidavit in opposition to the motion herein, indicates that Berley was "a land developer and builder who directly or indirectly owned and controlled large parcels of real estate in and around Albany County” and who had had several loan transactions with the defendant. In January of 1974, Berley’s outstanding loans had become very substantial and the defendant was becoming concerned about Berley’s ability to pay these loans. In the early part of that month, Berley, in a conference with the bank’s officials, advised them of the suit pending in Albany County and of the order vacating the lis pendens on condition that he post an undertaking in the sum of $40,000; that Travelers had agreed to do so provided that the bank indemnify Travelers by posting a letter of credit. Several weeks later, Berley returned to the bank requesting that the bank issue a letter of credit *967 for $40,000 at the same time providing the defendant bank with a form allegedly required by the plaintiff. After questioning Berley as to the limited documentation required to support a call upon it and after being assured by Berley that it was a mere formality and that the action would be quickly disposed of, the official caused the bank to issue its letter of credit.
The defendant bank now claims that it should be released from the terms of the letter of credit for a number of reasons.
It claims, first of all, that there was no consideration for the issuance of the letter of credit. Next, it states that the action was premature since the plaintiff had not made payment upon its undertaking. In addition, it asserts that the credit is unenforceable by reason of the fact that the plaintiff, having in its hands a certified check in the sum of $40,000, released the check and thereby released the defendant since the defendant was, in effect, a guarantor or a surety to the plaintiff. Lastly, the defendant bank alleges that it. was the plaintiffs fraud and concealment of facts which have rendered the letter of credit unenforceable.
Before proceeding in any direction it is necessary to make clear the nature of a letter of credit.
" 'Credit’ or 'letter of credit’ means an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Article (Section 5-102) that the issuer will honor drafts or other demands for payment upqn compliance with the conditions specified in the credit.” (Uniform Commercial Code, § 5-103, subd [1], par [a].)
"A letter of credit is a contract. It is distinguished by the fact that it is inevitably linked to another understanding, usually also a contract, but is independent of that other understanding or contract. Appreciation of these two simple concepts: that a letter of credit is a contract, and that the letter of credit contract stands alone to be construed within its own four corners, is sufficient to provide understanding of most complex letter of credit transaction. Such appreciation and continuing awareness, however, is not only sufficient to provide understanding, it is indispensable to avoid confusion.
"Confining ourselves, as noted above, to bank letters of credit, the first fundamental is that the bank engages itself as a principal in the letter of credit transaction but is neither engaged in nor, qua bank, in any way concerned with the *968 understanding, contract, or transaction which may have made the letter of credit necessary or convenient.
"The purpose of the letter of credit is to provide a method of payment, through banking channels, which defines the terms and conditions upon which and only upon which the payment will be made, and which, within the strict limits of those terms and conditions, engages the full primary responsibility of the bank to make the payment, in addition to whatever obligation may lie upon the party for whose account the bank has issued or confirmed the letter of credit. This is the only role which the bank undertakes, and its only engagement, legal, commercial, or moral. This is, in short, the limitation of the letter of credit. If the limitation is recognized at all times by all interested parties, there is room neither for dispute nor for disappointment. Disappointment, disputes, and litigation arise only when one or another of the parties overlooks the functional limitation and takes the bank’s letter of credit to be a guaranty of performance of some related but separate mercantile contract.” (Emphasis added; Harfield, Practice Commentaries, McKinney’s Cons Laws of NY, Book 62V2, Uniform Commercial Code, art 5, p 642.)
The letter of credit, probably because of its simple structure and its unqualified agreement to pay, notwithstanding any condition outside of its own terms, has become a principal instrument of international trade and, increasingly, of domestic transactions. It is in this framework that the defenses raised by the defendant should be considered.
LACK OF CONSIDERATION
The fact that plaintiff did not rely on the letter of credit when it issued its bond is not relevant to the question of consideration for the issuance of the letter of credit. If this were an issue at all, the question of consideration only arises as between the issuer of the credit and its customer. The beneficiary (Uniform Commercial Code, § 5-103, subd [1], par [d]) would not in any event give consideration to the issuer.
The problem of consideration does not arise, however, in view of section 5-105 of the Uniform Commercial Code, which states: "No consideration is necessary to establish a credit or to enlarge or otherwise modify its terms”. (L 1962, ch 553, eff Sept. 27, 1964; see, also, Official Comment, McKinney’s Cons Laws of NY Book 62Vi, Uniform Commercial Code, § 5-105, p 659.)
*969 ACTION PREMATURE SINCE NO PAYMENT MADE
The question here is as to when the obligation to pay under the letter of credit arose. The terms of the credit indicated that the fund could be drawn against when the plaintiff certified that it had "incurred liability”. Plaintiff contends that it had incurred liability when it issued the bond. It did nevertheless wait three years before calling in the funds. The implication, therefore, of the terms employed in the letter of credit as a condition of payment must be explored. The term incurred was one of the issues in Rubin v Empire Mut. Ins. Co. In the Appellate Division (32 AD2d 1, 3) the dissenting opinion stated: "The word 'incur’ is defined in Webster’s New International Dictionary, second edition, 'to become liable or subject to’.” It was the majority opinion that the plaintiff could not recover medical expenses which had been paid by his employer’s compensation carrier, since he had not incurred the expense. The Court of Appeals, however, reversed the Appellate Division holding: "There has been no construction of the term 'incurred’, in the context of the policy provision before us, in any prior New York case. In other jurisdictions the word has been given the meaning for which appellant contends. In point, for example, is Thomas v. Universal Life Ins. Co. (201 So. 2d 529 [La. App., 1967]) in which plaintiff recovered under the medical expense provisions, as against the defense that since those expenses had been paid by workmen’s compensation, he had never incurred them, the court holding in effect that inasmuch as the expenses could be charged against the insured, he had incurred them. Certainly, there has to be some period of time between the initial treatment and the establishment of compensation liability and, regardless of who ultimately pays or where the bills are first sent, the insured has subjected himself to liability for payment simply by undergoing the treatment. An older but nonetheless respectable authority, in differentiating between damage suffered and cost or damage incurred, expresses the common view: ' "Suffered means paid; incurred means become liable for.” ’ (Beekman v. Van Dolsen, 70 Hun 288, 294.)” (Rubin v Empire Mut. Ins. Co., 25 NY2d 426, 429.)
Obviously, the credit did not require that payment by the plaintiff be made before the draft could be presented. The cases cited (National Sur. Corp. v Titan Constr. Corp., 26 NYS2d 227; Maryland Cas. Co. v Straubinger, 19 AD2d 26) defining the obligations of an indemnitor to a surety do not *970 apply. The very definition of a letter of credit (Uniform Commercial Code, § 5-103, subd [1], par [a]) states that the issuer "will honor * * * upon compliance with the conditions specified in the credit.” The only condition specified in this credit was the certification of incurrence of liability. The further fact that the credit specified that any moneys left over "after liability under your bond or undertaking is satisfied” would be refunded militates against the defendant’s position. If it were necessary that the plaintiff first pay out the money, it could then issue drafts for the exact amount which it had paid out. It is noteworthy that the letter which accompanied the draft similary specified that any unused portion of the funds would be refunded to the defendant.
The closest approach to this situation is found in Fair Pavilions v First Nat. City Bank (24 AD2d 109, revd on other grounds 19 NY2d 512). Exhibitions De France Inc. engaged the plaintiff to construct a building at the New York City World’s Fair. The defendant at the behest of Willard International Financial Co., Ltd., issued a letter of credit to cover payment to the plaintiff according to a fixed schedule. The letter of credit, in one of its paragraphs, provided that Willard could terminate or cancel the credit after providing an affidavit that "one or more of the events described in clause XV” (p 515) had occurred. Prior to one of the availability dates, the bank received such an affidavit from Willard canceling the letter of credit because "one or more of the events described in clause XV * * * have occurred” (p 515). The plaintiff in the course of that action moved for summary judgment on the letter of credit. The motion for summary judgment was denied on the ground that there were issues presented. The Appellate Division affirmed but the Court of Appeals reversed, granting summary judgment to the plaintiff stating (p 518) that the letter of credit could not be canceled on "an affidavit so unspecific that the alleged default is kept secret and the beneficiary rendered powerless to cure it”. It was obvious the court held that in order to effectuate a cancellation the defect upon which Willard attempted to cancel the letter of credit would have had to be identified since there was also a provision in the agreement permitting the correction of any of the events specified in the said clause XV.
In the instant case, the opposite condition prevails. The mere certification that it had incurred liability would be *971 sufficient to entitle the plaintiff to issue its draft under the letter of credit.
RELEASE OF CERTIFIED CHECK WAS A RELEASE OF THE SURETY
A letter of credit, insofar as it is a contract, partakes of the rules of construction generally applicable to contracts. (Venizelos, S.A. v Chase Manhattan Bank, 425 F2d 461.) Since there were no special rules adopted with regard to interpretation of the terms of a letter of credit, the ordinary rules of law apply (Uniform Commercial Code, § 1-103).
"The same general principles which apply to other contracts in writing govern letters of credit. Fair Pavilions, Inc. v. First Nat’l City Bank, 24 A.D.2d 109, 264 N.Y.S.2d 255 (1965), rev’d on other grounds, 19 N.Y.2d 512, 281 N.Y.S.2d 23, 227 N.E.2d 839 (1967) * * * Moreover, as between the beneficiary of a letter of credit and the issuer (or in this case, Chase, since confirmers are to be treated as issuers under New York commercial law) if ambiguity exists, the words are taken as strongly against the issuer as a reasonable reading will justify. Lamborn v. National Park Bank of New York, 212 App.Div. 25, 208 N.Y.S. 428 (1925), aff'd 240 N.Y. 520, 148 N.E. 664.” (Venizelos, S.A. v Chase Manhattan Bank, supra, pp 465-466.)
In addition, the beneficiary, when it presents a demand for payment or a draft, warrants that there has been compliance with the necessary conditions of the letter of credit (Uniform Commercial Code, § 5-111, subd [1]).
The claim that the release of the collateral without knowledge or consent of the defendant, discharged the defendant’s obligation as a surety, depends upon the relationship of the defendant and plaintiff.
"The issuer of a letter of credit does not have the status of a surety or guarantor. A surety is generally not liable on his undertaking unless his principal is liable and in default on the underlying liability. The defenses of the principal are available to the surety and, if the underlying debt is cancelled, the surety’s obligation ceases. (Asociacion de Azucareros de Guatemala v. United States Nat. Bank (CA9 Or) 423 F2d 638.) The letter of credit, unlike the classic surety undertaking, is a primary obligation between the issuer and the beneficiary. (See UCC § 5-114:1, pt 1.)” (3 Anderson, Uniform Commercial Code [2d ed], § 5-114:7.)
Undoubtedly, a guarantor or a surety has the right to *972 expect that the terms upon which the guarantee was made would remain unchanged, absent the knowledge and consent to such change by the guarantor. A release of collateral or a change in the terms would certainly operate to release the surety or guarantor (Vose v Florida R. R. Co., 50 NY 369; Cohen v Rossmoore, 215 App Div 300).
In this case, the letter was not issued on the strength of any collateral held by the plaintiff. It is admitted in the affidavit in opposition that defendant had no knowledge that the bond was issued or how it was collateralized. It offered no guarantee to the plaintiff. It dealt entirely with its own customer. It had dealt with him on previous occasions and it knew that he had obligations which "were very substantial” and "the Bank was becoming concerned about Berley’s ability to pay the loans * * * Berley owed the Bank nearly $300,000. when the letter of credit was issued”. They had nearly five weeks, after being informed of all the circumstances, to inquire of the defendant as to the status of the bond. They questioned Berley as to the wording of the letter of credit and then, finally, accepted it, issuing the letter in the form suggested.
FRAUD AND CONCEALMENT
The previous point bears directly upon the defendant’s claim of fraud and concealment. The defendant claims that a fraud was practiced upon it but does not in any way indicate the manner or nature of the fraud. One cannot disagree with the rule that fraud will vitiate a contract. The real question here is whether the defendant was a victim of fraud practiced by the plaintiff or of self-deception.
The defendant was never approached by the plaintiff. They had no dealings with each other except that the defendant made the plaintiff the beneficiary of its letter of credit. Berley went to the defendant bank and inquired as to the charges for the credit. He told them, according to defendant’s affidavit, exactly what was transpiring with the exception, however, of not mentioning the certified check already deposited with the plaintiff. The defendant did not issue its credit in reliance on anything the plaintiff had said or done. It sought no assurance from the plaintiff. It did not even inquire of the plaintiff as to the status of the matter, though it was informed that the defendant would issue the bond upon the issuance of the letter of credit. This was Berley’s representation and the bank could *973 easily have verified the facts during the several weeks that passed between Berley’s inquiry and the issuance of the credit.
There was, consequently, no concealment by the plaintiff. Defendant cites Matter of First Citizens Bank & Trust Co. v Estate of Sherman (250 App Div 339, 345) "where the circumstances are of such a nature as to impose a duty upon one to speak, and where he deliberately fails to do so, his neglect will be deemed a deliberate suppression of the truth, and will amount to constructive, if not actual fraud. A concealment of facts which, if known to the surety, would have deterred him from entering into the contract of suretyship, or which increased the risk of his undertaking, constitutes fraud, and will prevent an enforcement of his obligation. [Citing cases.]”
This ignores the duty which the defendant had, to make inquiry. Being in possession of all of the facts except with regard to the certified check and given its own knowledge of the shaky condition of Berley’s finances, was it not, rather, the duty of the bank to fully satisfy itself and confirm the facts before issuing the credit? It had adequate time and, certainly, abundant incentive to do so. Yet it did not. The papers reveal that there was no contact between the parties regarding this matter until Berley delivered the credit to the plaintiff.
Assuming, arguendo, that the plaintiff had assured Berley that it would release the check if Berley produced a letter of credit there would still be no fraud. The defendant fails to offer any reason, and none occurs to this court, as to why or how there was a duty on the plaintiff to rush to the defendant with the news that it had a certified check, paramount to the duty on the defendant, who was about to underwrite a large sum of money for a shaky client, to make inquiry. Accordingly, the claim of fraud or concealment is unfounded.
The defendants’ cross motion to dismiss the plaintiff’s motion for summary judgment in lieu of a complaint, pursuant to CPLR 3211 (subd [a], par 7), upon the ground that it fails to state a cause of action, is denied. Alternatively, the defendants move for a denial of the plaintiff’s motion for summary judgment and granting the discovery in aide of the defenses, pursuant to CPLR 3212 (subd [f]). This branch of the motion is similary denied. It is settled, of course, that a motion for summary judgment may not be defeated by arguments and contentions " 'based upon surmise, conjecture and suspicion *974 [cases cited]’ (Gray Mfg. Co. v Pathe Ind., 33 AD2d 739, affd 26 NY2d 1045.)
Accordingly, the motion for summary judgment made by the plaintiff is granted. It may enter judgment in the sum of $40,000. In due course the plaintiff shall account to the defendant as to the disposition of the funds and refund any sum not expended by virtue of the bond.
The cross motion is in all respects denied.